<u>NOT FOR PUBLICATION</u>                          (Docket Entry No. 28)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____ :
                                :
BARBARA A. BERECZKI,            :
                                :
            Plaintiff,          :     Civil No. 03-276 (RBK)
                                :
       v.                       :     OPINION
                                :
MANSFIELD TOWNSHIP AND DONNA    :
SNYDER,                         :
                                :
            DefendantS.         :
_____ :
```

**KUGLER,** United States District Judge:

This matter comes before the Court on motion by Defendants
Mansfield Township ("Township") and Donna Snyder ("Snyder,"
collectively "Defendants") for summary judgment on the claims of
Plaintiff Barbara A. Bereczki ("Plaintiff"). For the reasons set
forth below, Defendants' motion for summary judgment will be
granted.

## I.   Background

At the heart of this case are the events of February 2001
surrounding Plaintiff's removal from the Mansfield Municipal
Court office where she was employed as a municipal court
administrator. On February 16, 2001, Judge John A. Sweeney, the
county assignment judge responsible for overseeing the court and
its employees, faxed a letter to the Township removing Plaintiff

from the court offices. Plaintiff alleges, among other claims, that this removal deprived her of due process and the right to a hearing, violated a settlement agreement between Plaintiff and the Township, and constituted unlawful retaliation for the suit resolved by the settlement agreement.

Prior to her retirement in March 2001, Plaintiff was a tenured municipal court administrator in Mansfield Township since 1970. She and her husband brought a lawsuit against the Township in 1999, raising a number of allegations including age and gender discrimination. They entered into a settlement agreement with the Township on January 29, 2001, in which the Township agreed to pay a lump sum to Plaintiff and her husband. In exchange, Plaintiff agreed to retire within sixty days or when her pension initiated, whichever came first. The settlement also contained nondisparagement and confidentiality clauses.[1]

In February 2001, approximately two weeks after Plaintiff and the Township entered into the settlement agreement, and six weeks before Plaintiff's retirement was to go into effect, four of Plaintiff's coworkers approached Defendant Snyder, the Clerk Administrator for the Township, with complaints about Plaintiff's

---

[1] Specifically, the settlement agreement provided: "The parties agree not to disparage each other or speak ill of each other in any way. There will be no acts of retaliation by any parties." The agreement further required the parties to "agree to keep the term of this agreement strictly confidential and not to divulge or communicate them in any way to any other person or entity." (Pl.'s Ex. 1.)

behavior and her negative influence on the office environment.
Snyder recommended that the employees put their concerns in
writing to communicate them to Plaintiff's immediate supervisor,
Judge Andronici, the municipal court judge responsible for
problems in the court's functions. (Pl.'s Opp. at 13.) Without
any further assistance or input from Snyder, the four employees
typed and faxed the following letter to Judge Andronici on
February 13:

> Dear Judge Andronici:
>
> We are seeking your assistance with an ongoing
> situation that is getting unbearable and we must advise
> you that this is not a personal vendetta against
> Barbara Bereczki, but an issue that must be addressed
> to keep harmony.
>
> It must be noted that Barbara puts a strain on the
> offices' congenial atmosphere and she dictates what the
> climate should be. Most days the atmosphere is tension
> filled and we are afraid to say something that might
> make her "snap".
>
> Barbara talks loudly, stomps about, tosses papers and
> slams doors when she gets upset. One day she is cursing
> her job and "this place" and can't wait to leave, the
> next day she is yelling, or literally crying out loud
> that she has to stay at "this place". She is up, she is
> down, she is in, and she is out and seems like she is
> not around when you need a question answered. She is so
> loud that it is impossible to concentrate on a phone
> call when she is in our office. With Barbara's
> actions/inactions we are unable to perform our jobs
> professionally in the public eye.
>
> Currently she is accusing us for "not sticking up for
> her, because she sticks up for us" (e.g. trying to get
> us a raise).
>
> In closing you know that we like our jobs and the four
> of us have a great harmonious working relationship. We

3

> get the job done in the Violations Office in the
> presence of, or the absence of Barbara. We hope you
> understand our position and we await your direction.

(Pl.'s Ex. 4.)

Judge Andronici met with the four employees at a diner. Soon

thereafter, Snyder contacted Stephen Raymond, the Township

solicitor, because she was concerned that the four employees were

going to resign, and she wanted to close the office so that the

employees could go home to regain their composure instead of

quitting. (Pl.'s Ex. 16 at 10.) Raymond told her that she could

not close the office, and he set up a conference call with Judge

Sweeney, the county assignment judge. (Pl.'s Ex. 16 at 10.)

During the call on February 16, 2001, Snyder told Judge Sweeney

that Plaintiff's coworkers were very upset and expressed her

concern that they would quit their jobs. (Pl.'s Ex. 16 at 11.)

At some point after this conversation, Judge Sweeney faxed a

letter to Mansfield Township stating:

> Mayor, Township Committee and Clerk Administrator:
>
> After conferencing with Clerk Administrator, Donna
> Snyder, Steve Raymond, Esquire, and Honorable Richard
> Andronici, I am ordering that the Municipal Court
> Administrator, Barbara Bereczki, be immediately removed
> from the court and court offices in Mansfield Township.
> I take this action to protect the integrity of the
> court and for the safety and well-being of other court
> employees.

(Pl.'s Ex. 5.) Pursuant to this letter, Plaintiff was not

permitted to return to the court offices, and Judge Sweeney's

letter was placed in Plaintiff's personnel file. There was a

4

hearing on May 25, 2001, but it appears that Plaintiff could not attend. (Pl.'s Ex. 14 at 74.) At the hearing, Judge Sweeney took full responsibility for his letter. (Def.'s Ex. 3.)

Plaintiff was unable to find a new position after leaving her job at the municipal court. At the time of her first deposition on December 9, 2003, she had applied for seven jobs and received an interview in response to one of the applications. (Pl.'s Ex. 13.) She did not receive that job and claims that she ultimately had to take a job in another field at a significantly reduced salary.

Plaintiff also raises claims related to a publicity flyer released by Kelly Shea, a former councilman who was one of the signers of the settlement agreement on behalf of the Township. The flyer was distributed during Kelly Shea's reelection campaign against Plaintiff's husband, and states in part that: "The $300,000+ Bereczki Family lawsuit against the township seeks more of your tax dollars. This was settled once and they're going to the well (our pockets) again." (Pl.'s Ex. 6.)

Plaintiff filed a Charge of Discrimination with the EEOC in October 2001. The EEOC found that "there is reason to believe that violations have occurred." Specifically, the EEOC determined:

> [E]vidence obtained during the investigation
> establishes violations of Title VII of the Civil Rights
> Act of 1964, as amended, and the Age Discrimination in
> Employment Act, as amended, when Charging Party was

prematurely removed form her position and when a
disparaging termination letter was placed in her
personnel file. In addition, I have determined that the
evidence establishes a violation of the Americans with
Disabilities Act in that medical documentation is
illegally maintained in that file.

(Pl.'s Ex. 9.)

After receiving her "right to sue" notice from the EEOC,
Plaintiff filed this suit against Defendants Snyder and the
Township on January 21, 2003. Although unclear due to the
improper pleading style of the complaint,[2] Plaintiff appears to
make the following claims: (1) wrongful termination and violation
of due process for terminating Plaintiff's employment without
good cause or a hearing as required by N.J.S.A. 2A:8-13.3; (2)
breach of the 2001 settlement agreement by disparaging and
retaliating against Plaintiff in violation of the no
disparagement or retaliation clauses; (3) violation of
Plaintiff's "liberty interest" by the placement of Judge
Sweeney's letter in Plaintiff's personnel file; (4) creation of a
hostile work environment; (5) intentional interference with
business/economic advantage; (6) retaliation for the 1999

---

[2] Plaintiffs' Complaint consists of a single count
listing all possible causes of action, and is, therefore,
improperly pleaded. See Fed. R. Civ. P. 10(b); De Leys v. Keta
Gas & Oil Co., 18 F.R.D. 353, 354 (W.D. Pa. 1955) ("[I]f more
than one claim is alleged in the complaint, a separation of the
claims is required where it will facilitate a clear presentation
of the matters set forth."). As a result, the Complaint is
unclear, and it is not evident precisely what causes of action
Plaintiff is claiming.

lawsuit; (7) gender and age discrimination; and (8) intentional infliction of emotional distress.

Defendants filed the present motion for summary judgment on May 20, 2005. Although the motion hearing date was set for June 17, 2005, Plaintiff's counsel did not respond to Defendants' motion until moving to file an opposition out of time on October 17, 2005. Plaintiff's counsel claimed they never received Defendants' motion. This Court granted Plaintiff's motion to file out of time over Defendants' opposition, and Plaintiff filed an opposition to Defendants' motion on November 4, 2005.

## II.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to

the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n. 2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50.).

Where an element of the motion for summary judgment is unopposed, the moving party is not automatically entitled to summary judgment. Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991). Rather, "the Court must first determine whether summary judgment is appropriate-- that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." Talbot v. United States, 2005 WL 2917463, *2 (D.N.J. 2005). However, where the nonmoving party does not submit facts in opposition, "it is entirely appropriate for this court to treat all facts properly supported by the movant to be uncontroverted." Id. (quoting Allebach v. Sherrer, No. 04-287, 2005 U.S. Dist. LEXIS 15626, at *5 (D.N.J. 2005)).[3]

### III. Due Process

Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants violated her due process and liberty rights by depriving her of a hearing and placing Judge Sweeney's letter into her personnel file.

### A. N.J.S.A. 2A:8-13.3

Plaintiff argues that Defendants terminated her employment without the hearing required by N.J.S.A. 2A:8-13.3, depriving her

---

[3] Plaintiff has not filed a statement of undisputed facts as required by Local Civil Rule 56.1. It should be noted also that, aside from the relevant letters and a brief excerpt of Defendant Snyder's deposition testimony, the record submitted in support of Plaintiff's opposition for summary judgment contains no evidence addressing the most important incidents at issue in this case, including the interactions between Snyder and the four disgruntled employees, the conference call with Judge Sweeney, or the actions taken by Judge Androcini after receiving the employees' letter. Accordingly, as discussed in detail below, Plaintiff has not set forth any facts that would permit a reasonable juror to find in her favor on any of her claims.

of due process. Defendants contend that Plaintiff was not actually terminated, but only removed from the court offices. Defendants also argue that because the decision to remove Plaintiff was made by Judge Sweeney, rather than a Township employee or representative, neither the Township nor Snyder can be held accountable for any termination of employment.

Under N.J.S.A. 2A:8-13.3, a full-time administrator of a municipal court for at least five consecutive years can be removed from the position only for good cause "after a public, fair and impartial hearing."[4] Where a state statute provides that a public employee can be terminated only for good cause, the employee has a constitutional property interest in her continued employment, bringing her employment under the auspices of due process. Leventhal v. U.S. Dept. of Labor, 766 F.2d 1351, 1355 (9th Cir. 1985); McKeever v. Township of Washington, 236 F. Supp. 2d 400, 404 (D.N.J. 2002). An employer's failure to provide a

_____

[4] N.J.S.A. 2A:8013.3 provides in relevant part: Any person holding office, position or employment as full-time administrator of a municipal court who has held such office, position or employment continuously for five years or more and who has become certified during that period shall hold and continue to hold said office, position or employment during good behavior and shall not be removed therefrom for political or other reasons except for good cause, upon written charges and after a public, fair and impartial hearing.

statutorily mandated hearing prior to termination of employment violates the Fourteenth Amendment, depriving the employee of procedural due process even if good cause exists for her termination. McKeever, 236 F. Supp. 2d at 404, 409 (holding that New Jersey statute with essentially the same wording as N.J.S.A. 2A:8-13.3 created a property interest in employee's tenured position).[5]

Thus, if Plaintiff could show that Snyder or the Township fired her without a hearing, she would have a valid due process claim against Defendants. However, Plaintiff's allegations appear to relate solely to an act by Judge Sweeney, who is neither a defendant in this case, nor a Township employee.

Plaintiff has made no evidentiary showing that Defendants terminated her employment or had a responsibility to provide her with a hearing but failed to do so. The record suggests only that

---

[5] Plaintiff also appears to bring a due process claim, raised for the first time in the opposition to Defendants' motion, on the basis that Defendants' actions violated the Township's Employee Handbook Policies and Procedures Manual procedures for employee grievances. However, it is well established that Plaintiff cannot rely on statements in the Township's Employee Manual for a constitutional claim. Elmore v. Cleary, 399 F.3d 279, 282-83 (3d Cir. 2005); Short v. Borough of Lawrenceville, 548 Pa. 265, 267 (Pa. 1997) ("[A]n employee handbook or personnel manual issued by a Commonwealth agency is not a legislative action in itself and cannot be considered a contract guaranteeing a property right in employment unless the legislature has so provided.").

Plaintiff's coworkers had difficulties working with Plaintiff, that they approached Snyder, the Township administrator, to voice their concerns, and that Snyder instructed them to put their grievances in writing to submit to Plaintiff's superior, Judge Androcini. A conference call later took place between Snyder, the Township solicitor, and Judge Sweeney, the assignment judge for the county, at which time Snyder told Judge Sweeney only that she was concerned the employees would quit. Snyder neither considered the conference call a disciplinary action, nor realized that the outcome of the conversation would be Plaintiff's removal from the court offices. (Pl.'s Ex. 16 at 13.) There is no indication that the communications with Judge Sweeney were improper or that Snyder "disparaged Plaintiff to Judge Sweeney." (Pl.'s Opp. at 5.)

Defendants took no further actions, but Judge Sweeney later faxed the Township a letter mandating removal of Plaintiff from the court. Judge Sweeney took full responsibility for this decision during the hearing of May 25, 2001, and stated for the record, "I did that . . . I did that . . . Now, if you want to sue me, sue me. But I did that as assignment judge . . . I take full responsibility for removing her before the expiration of the 60-day period. Counsel had not a say in that decision at all." (Def.'s Ex. 3.) Plaintiff admits that there is no evidence or information suggesting that anyone from the Township asked Judge

Sweeney to remove her. (Pl.'s Ex. 15 at 94.) She also acknowledges that there was nothing Defendants could do, once Judge Sweeney made his decision. (Def.'s Ex. 8 at 26.)

Thus, the sole action taken by Snyder or any other Township employee was to voice concerns to Judge Sweeney in response to serious complaints by Plaintiff's coworkers. The record is entirely bereft of any indication that any Township employee recommended or requested Plaintiff's removal, attempted to fire Plaintiff, bore any responsibility for influencing Judge Sweeney's decision, or even realized that the episode would result in Plaintiff's removal from the court offices. Plaintiff has not provided any facts or legal arguments establishing how the communication with Judge Sweeney could have violated her due process rights. N.J.S.A. 2A:8-13.3, by its plain language, applies only to terminations of employment, and Judge Sweeney alone made the decision to remove her.

Without any factual support, Plaintiff's allegations that Defendants caused her removal are nothing more than "mere allegations, general denials, or such vague statements," Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991), entitling Defendants to summary judgment on Plaintiff's due process claim.

**B.   Liberty Interest**

Plaintiff alleges that Defendants' placement of Judge Sweeney's letter in her personnel file violated her liberty

interest in pursuing future employment. A liberty interest claim requires governmental action harming an individual's "reputation, honor, or integrity." Ersek v. Township of Springfield, 102 F.3d 79, 83 (3d Cir. 1996) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 510 (1971)). Thus, the plaintiff must allege that Defendants made "a publication that is substantially and materially false." Id. at 83-84 (citing Codd v. Velger, 429 U.S. 624, 627-29 (1977); Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 82 (3d Cir. 1989)).

The publication requirement rises from the principle that the communication must be publicly disseminated in order to "properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired." Bishop v. Wood, 426 U.S. 341, 348 (1976). Thus, a liberty interest claim cannot survive summary judgment unless the plaintiff provides some evidence of a public disclosure or actual communication of the information concerned. Chabal v. Reagan, 841 F.2d 1216, 1224 (3d Cir. 1988) ("[T]he district court correctly regarded as dispositive that Plaintiff 'makes no allegation whatsoever that the government communicated to the general public any information . . . or in any other manner disparaged his name.'"). Without more, the mere placement of a disparaging letter in a file is not enough to satisfy the publication element. Cooley v. Pennsylvania Hous. Fin. Agency, 830 F.2d 469,

14

473-74 (3d Cir. 1987) (holding that presence of letter in personnel file is insufficient to establish violation of a constitutional liberty interest).

Because Plaintiff provided no facts indicating that Defendants communicated with Plaintiff's prospective employers or publicly disseminated any information about the letter in her file, Plaintiff's "evidence is insufficient to establish an essential element of her claim," Celotex, 477 U.S. at 331, and Defendants are entitled to summary judgment on Plaintiff's liberty interest claim.

## IV. Violation of the Settlement Agreement

Plaintiff argues that the letter by her coworkers and a campaign flyer by a Township council candidate breached the disparagement and confidentiality provisions in the January 2001 settlement agreement. Defendants argue that they cannot be held responsible for either the letter or the flyer.

It is undisputed that four of Plaintiff's coworkers approached Snyder with complaints about Plaintiff, and that, per Snyder's recommendation, they wrote a letter expressing their grievances to Plaintiff's superior, Judge Androcini. However, Plaintiff does not articulate any plausible theory as to how the letter constitutes disparagement by either the Township or

Snyder.[6]

Plaintiff provides no evidence indicating that anyone besides Judge Androcini saw the letter, and all evidence demonstrates that no Township representatives, including Snyder, had any influence over the letter's content. Furthermore, the four coworkers are neither Defendants in this case, nor parties to the settlement agreement. Plaintiff fails to explain how the Township could be liable for a letter independently and voluntarily written by Plaintiff's coworkers to Plaintiff's superior, complaining about Plaintiff's conduct after the settlement.

Plaintiff faces similar difficulty establishing how Defendants could be liable for a campaign flyer distributed by Kelly Shea ("Shea") in a councilman election campaign against Plaintiff's husband. Plaintiff claims that the flyer disparaged her husband and disclosed the settlement by stating, "The $300,000+ Bereczki Family lawsuit against the township seeks more of your tax dollars. This was settled once and they're going to

---

[6] Instead of elaborating a theory of how the letter amounted to a breach, explaining how the letter was disparaging, or offering evidence suggesting that Snyder did anything more than tell employees to put their grievances in writing, Plaintiff's opposition provides only an abstract description of the fundamental law of contract creation, breach, and assessment of damages. Consequently, while Plaintiff has established that violating a settlement agreement is unlawful, Plaintiff has not provided any iota of explanation as to how Defendants allegedly violated the settlement agreement in this case.

the well (our pockets) again." (Pl.'s Opp. 6.)

However, Shea is not a defendant in this suit and neither Snyder nor the Township is accountable for statements made in Shea's political flyer. Although Shea, as a former councilman, was one of the signers of the settlement agreement, he was obviously not acting on behalf of the Township when he distributed campaign material. Plaintiff does not allege that the campaign literature was authorized, created, distributed, or paid for by either Defendant.[7] Plaintiff has not established how Defendants could be liable for a flyer distributed by a third party.

Accordingly, because Plaintiff has not alleged any facts that would enable a reasonable juror to conclude that the Defendants of the present suit—Snyder and the Township—violated the settlement, Defendants are entitled to summary judgment on these claims.

## V.   Retaliation

Plaintiff alleges gender and age discrimination on the grounds that Defendants retaliated against her for her earlier 1999 lawsuit, which had included claims of gender and sex discrimination. To establish a prima facie retaliation claim, Plaintiff must demonstrate: "(1) that she engaged in protected

---

[7] The bottom of the flyer reads: "Paid for by 'Shea & Mansure for Township Committee.'" (Pl.'s Ex. 6.)

17

activity, which was known by the alleged retaliator; (2) that an adverse action was taken against her; and (3) that there was a causal connection between the protected activity and the retaliation." Velantzas v. Colgate-Palmolive Co., Inc., 109 N.J. 189, 193 (N.J. 1988); Gemmell v. Meese, 655 F. Supp. 577, 583 (E.D. Pa. 1986); see also Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30 (N.J. 1995) (reiterating the test).

Once a plaintiff establishes a prima facie case, the burden "shifts to the employer to prove a legitimate, non-discriminatory reason for the employment action." Id. (citations omitted). If the employer provides a satisfactory explanation, the burden shifts back to the plaintiff to show "the employer's proffered reason was merely pretext for the discrimination." Id. At the summary judgment stage, the plaintiff must "submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Kluczyk v. Tropicana Prod., Inc., 368 N.J. Super. 479, 493 (N.J. App. Div. 2004) (applying the burden-shifting mechanism in the retaliation context); see also Lawrence v. National Westminster Bank, 98 F.3d 61, 66 (3d Cir. 1996).

Plaintiff argues that she established a prima facie case for retaliation. Specifically, she contends that her 1999 lawsuit against the Township was protected activity, Defendants' decision to approach Judge Sweeney with their complaints was an adverse employment action, and the temporal proximity of Judge Sweeney's letter to the settlement agreement resolving the 1999 lawsuit established causation. However, even if Plaintiff successfully demonstrated a prima facie retaliation claim, Defendants provided a legitimate non-retaliatory explanation for their actions, and Plaintiff has not pointed to any evidence suggesting that these reasons were mere pretext.

Specifically, Defendants claim that they approached Judge Sweeney because four court employees threatened to quit their jobs due to difficulties in working with Plaintiff. In light of this explanation, Plaintiff must either: (1) discredit Defendants' proffered reasons, or (2) adduce evidence indicating that retaliation was more likely than not a motivating or determinative cause of Defendants' actions. Waldron v. SL Indus., Inc., 56 F.3d 491, 495 (3d Cir. 1995) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

However, Plaintiff provided no evidence suggesting that Defendants' explanation was pretext concealing an illicit motive, nor has Plaintiff demonstrated any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" Defendants'

19

explanation such that "a reasonable factfinder could rationally find them 'unworthy of credence.'" <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) (quoting <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 527 (3d Cir. 1992) ("[A] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision.").[8]

Accordingly, this Court must grant summary judgment for Defendants on Plaintiff's claims of gender and age discrimination.

**VI.  Intentional Infliction of Emotional Distress**

To demonstrate a claim for intentional infliction of emotional distress (IIED), "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." <u>Buckley v. Trenton Saving Fund Soc.</u>, 111 N.J. 355, 366-67 (N.J. 1988) (quoting M. Minzer, <u>Damages in Tort Actions</u>, vol. I, § 6.12 at 6-22 (1987)). To survive summary judgment, Plaintiff must provide evidence that she experienced distress "so severe that no reasonable man could

---

[8] It is unclear whether Plaintiff is also alleging that Defendants' discriminated against her on the basis of her age and gender. However, Plaintiff's failure to offer evidence establishing that Defendants' prooffered explanation was pretextual extends to any allegations of discrimination associated with Judge Sweeney's letter, as she has failed to offer any evidence of any ulterior motive underlying Defendants' decision to approach Judge Sweeney after the court employees threatened to quit their jobs. Consequently, Defendants are also entitled to summary judgment to the extent that Plaintiff alleges gender and age discrimination.

be expected to endure it." Id.; Tarr v. Ciasulli, 181 N.J. 70, 77 (N.J. 2004) (noting that it is the job of the court to decide "whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved") (quoting Buckley, 111 N.J. at 366).

Although Plaintiff alleges IIED in her complaint and opposes Defendants' motion for summary judgment on the IIED claim, Plaintiff nowhere indicates what kind of distress it was that she experienced. In her opposition to Defendants' motion, Plaintiff states only that "Plaintiff has in this case shown 'truly genuine and substantial' emotional distress." (Pl.'s Opp. at 12.) However, Plaintiff mentions no symptoms, physical or emotional injury, or facts hinting at what precisely that distress might be. Having failed to provide so much as a single allegation of a specific manifestation of distress, emotional or otherwise, Plaintiff has not satisfied her burden to provide evidence to establish a material question of fact.

## VII. Common Law Fraud and Misrepresentation

In her opposition, Plaintiff alleges fraud and negligent misrepresentation on the basis that Defendants' statements to Judge Sweeney were untrue. However, this claim was not alleged in the complaint and cannot be raised for the first time in an opposition to a motion for summary judgment. See e.g, Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At

the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)."); <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); <u>Fisher v. Metro. Life Ins. Co.</u>, 895 F.2d 1073, 1078 (5th Cir. 1990); <u>see also</u> Fed. R. Civ. P. 9(b) (requiring allegations of fraud or mistake to be "stated with particularity" in the complaint). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of negligent misrepresentation and common law fraud.

## VIII.    Americans with Disabilities Act

Plaintiff claims a "technical" violation of the Americans with Disabilities Act (ADA) due to the presence of medical documentation in her personnel folder. Defendants argue that Plaintiff's ADA claim cannot survive summary judgment because Plaintiff failed to provide any evidence of damages. Plaintiff does not mention this claim in her opposition to Defendants' motion.

The ADA requires that "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record." 42 U.S.C. § 12112 (d)(3)(B). However, "there is no indication in either the text of

22

the ADA or in its history that a technical violation of §
12112(d) was intended to give rise to damages liability." <u>Tice</u>
<u>v. Centre Area Transp. Auth.</u>, 247 F.3d 506, 520 (3d Cir. 2001)
(citing <u>Armstrong v. Turner Indus., Inc.</u>, 141 F.3d 554, 561 (5th
Cir. 1998). Consequently, a plaintiff cannot succeed on an ADA
claim, unless she provides "evidence as to the actual existence
of such harms as a result of [the employer's] ADA violations."
<u>Id.</u> (dismissing § 12112 (d)(3)(B) ADA claim where Plaintiff
submitted no evidence of harm or "identified a single person who
improperly viewed his medical files").

No evidence indicates that any unauthorized person has seen
Plaintiff's medical records. As Plaintiff has provided no
evidence of any harm resulting from the presence of medical
information in her personnel file, her ADA claim must be
dismissed.

## IX.   Interference with Business/Economic Advantage

Plaintiff claims that Defendants tortiously interfered with
a business advantage by preventing Plaintiff from obtaining other
employment in her field. Defendants request summary judgment on
the basis that there is no evidence of any action by Defendants
that interfered with Plaintiff's economic prospects. Plaintiff
does not mention her tortious interference claim in her
opposition to Defendants' motion.

A claim for tortious interference with a prospective

business relationship requires plaintiff to establish:

> (1) [she] had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage.

Singer v. Beach Trading Co., Inc., 379 N.J. Super. 63, 81 (App. Div. 2005) (affirming summary judgment on the basis that Plaintiff presented no evidence that Plaintiffs acted with malice) (citing Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super 55, 79-80 (App. Div. 2004)).

Here, there are no facts suggesting that Defendants took any action that had any influence on Plaintiff's "prospective gain" or "anticipated economic benefit." Plaintiff appears to ground her tortious interference claim on the assumption that Judge Sweeney's letter, which was placed in her personnel file, adversely affected her attempts to obtain employment. However, besides noting the physical placement of the letter in the file, Plaintiff has presented no evidence in support of this theory. There is no indication, other than Plaintiff's vague statements, that Defendants were contacted by a prospective employer or that any unauthorized person saw either the letter from Plaintiff's coworkers or the letter from Judge Sweeney.

Because Plaintiff has not provided any evidence supporting her claim of tortious interference, Defendants are entitled to

summary judgment. See e.g, Mandel, 373 N.J. Super at 79-80
(affirming summary judgment on the basis that "plaintiffs failed
to identify even a single client who declined to deal with them
or made fewer trades because of Defendant's action" and "mere
speculation" was insufficient).

## X.   Hostile Work Environment Claim

Plaintiff also claims that Defendants created a hostile work
environment. Defendants move for summary judgment on the grounds
that Plaintiff presented no specific allegations or evidence in
support of her allegations of a hostile workplace. Plaintiff did
not oppose summary judgment on her hostile work environment
claim.

To survive a motion for summary judgment on a hostile work
environment claim, the plaintiff must offer some proof that her
"workplace is permeated with discriminatory intimidation,
ridicule, and insult that is sufficiently severe or pervasive to
alter the conditions of the victim's employment and create an
abusive working environment." Abramson v. William Paterson
College of New Jersey, 260 F.3d 265, 278-79 (3d Cir. 2001)
(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)
(internal quotation marks and citation omitted). Similarly, to
ascertain whether the plaintiff has demonstrated a hostile or
abusive environment, the court must examine "all the
circumstances. These may include the frequency of the

25

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 276-77 (3d Cir. 2001) (quoting Harris, 510 U.S. at 23); Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 414 (D.N.J. 2003).

Plaintiff alleges no circumstances that would rise to the level of "pervasive and regular" discrimination or an "abusive working environment" sufficient to create a hostile workplace. Neither the letter written by Plaintiff's coworkers, nor the ensuing conference call with Judge Sweeney amount to anything more than a single, isolated incident, and certainly cannot be characterized as a campaign of discriminatory intimidation.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of a hostile work environment.

The accompanying Order shall enter today.


Dated:  12-13-05                      s/ Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge